GREEN'S ADVERTISING AGENCY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6410, 9388.   Promulgated September 29, 1927.

On the evidence, *held,* the petitioner was not a personal service corporation during the years 1919, 1920, and 1921.

*F. Mandelbaum, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

These proceedings, which were duly consolidated for hearing and decision, are for the redetermination of deficiencies in income and profits taxes in the amount of $8,020.98 for the year 1919, $19,136.99

for the year 1920, and $17,126.58 for the year 1921. The only issue raised is whether the petitioner was during the years 1919, 1920, and 1921, entitled to classification as a personal service corporation.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of California in the year 1906, with a capital stock of $25,000 divided into 10,000 shares of the par value of $2.50 each. During the years 1919, 1920, and 1921, $4,900 shares of the capital stock were held and owned by I. M. Green, 5,000 shares by T. H. Smith, and 100 shares stood on the books of the corporation in the name of Mrs. I. M. Green, wife of I. M. Green. The shares standing in the name of Mrs. Green were for the purpose of qualifying her as a director of the corporation. All dividends declared by the corporation were paid in equal amounts to I. M. Green and T. H. Smith. Green was president and Smith vice president of the corporation, and each of them received a salary of $6,000 per year.

The business of the petitioner was that of advertising in theatres on curtains, programs, slides and films. The space on the curtains, programs, slides and films, and the privilege of displaying advertising in the theatres, were purchased by the petitioner either for a determined amount or on a commission basis, and sold to its clients, and the advertising was procured by the petitioner from advertisers and displayed in the theatres by being printed on the programs, painted on the curtains, or shown by means of slides or films.

Green and Smith devoted their entire time to the petitioner's business, and they procured all the contracts for space in the theatres and on the programs, slides and films, and all contracts from the advertisers. The only person regularly employed by the petitioner was a young woman bookkeeper.

The advertisements painted, printed, or shown by the petitioner for its clients, were usually designed by Green or Smith, although in some instances they were designed by the clients, and they were painted, printed or otherwise prepared by persons employed by the petitioner for that purpose. These persons were not, however, regularly employed by the petitioner but were hired as and when there was work to be done.

Payments to the theatres for space and advertising privileges were usually made by the petitioner at the end of each month. The contracts between the petitioner and its clients usually covered a period of time, payments to be made monthly in advance.

The balance sheets of the petitioner at the close of the years 1919, 1920, and 1921, were as follows:

|  | Dec. 31, 1919 | Dec. 31, 1920 | Dec. 31, 1921 |
|---|---|---|---|
| **ASSETS** | | | |
| Cash | $1,868.06 | $17,399.64 | $9,414.73 |
| Accounts receivable | 11,996.08 | 18,887.75 | 18,394.87 |
| Personal accounts | 2,000.00 | 500.00 | 280.75 |
| Furniture and fixtures | 266.53 | 466.01 | 460.25 |
| Automobile accounts | | | 1,000.00 |
| Suspense accounts | 223.08 | | 75.00 |
| Advanced expense | | 1,333.34 | |
| Good will | 10,000.00 | 10,000.00 | 10,000.00 |
| | 26,353.75 | 48,586.74 | 39,625.60 |
| **LIABILITIES** | | | |
| Accounts payable | 214.10 | 40.00 | |
| Reserve for bad accounts | 140.95 | | |
| Capital stock | 25,000.00 | 25,000.00 | 25,000.00 |
| Dividend account (dividends declared but unpaid) | | 23,000.00 | 14,000.00 |
| Surplus | 998.70 | 546.74 | 625.60 |
| | 26,353.75 | 48,586.74 | 39,625.60 |

The petitioner's expenditures during the years 1919, 1920, and 1921, and the amounts distributed to its stockholders as dividends in those years, were:

|  | Net earnings | Dividends |
|---|---|---|
| 1919 | $26,871.70 | $26,000.00 |
| 1920 | 56,875.74 | 57,000.00 |
| 1921 | 52,381.01 | 52,000.00 |

The dividends declared and unpaid at the end of the year 1920 and the end of the year 1921 were payable during the years 1921 and 1922, respectively, as funds became available for that purpose. The balance in accounts receivable at the close of each year represented amounts which were due and uncollected from advertisers. Bills were rendered each month and were collected as soon thereafter as possible.

The petitioner's expenditures during the years 1919, 1920, and 1921 were as follows:

|  | 1919 | 1920 | 1921 |
|---|---|---|---|
| For space and privilege of advertising in theaters | $32,168.13 | $32,935.75 | $38,045.35 |
| Program expense, printing, cuts, color plates, etc | 8,089.18 | 13,897.12 | 12,395.64 |
| Curtain expense, new curtains, painting, spotlighting | 1,625.65 | 9,933.69 | 9,707.75 |
| Slide expense, making slides | 13.45 | 119.14 | 308.30 |
| Lamp expense | | | 244.47 |
| Salaries and commissions | 2,647.20 | 3,287.70 | 3,879.55 |
| Office rent | 960.00 | 1,060.00 | 1,080.00 |
| Automobile expense | 2,544.81 | 1,869.20 | 2,314.74 |
| Office supplies, postage, telephone, legal services, etc | 1,076.46 | 4,712.98 | 6,902.49 |
| Salaries of I. M. Green and T. H. Smith | 12,000.00 | 12,000.00 | 12,000.00 |
| | 61,124.88 | 79,815.58 | 86,878.29 |

The petitioner made its return of income for the years 1919, 1920, and 1921 as a personal service corporation, and Green and Smith reported their respective shares of its earnings in their individual returns for those years. The respondent, upon audit of the petitioner's return, determined that it was not a personal service corporation and that there are deficiencies in tax in the amount of $8,020.98 for 1919, $19,136.99 for 1920, and $17,126.58 for 1921.

OPINION.

MARQUETTE: The parties to this proceeding are in accord as to the amount of the petitioner's net income for the years 1919, 1920, and 1921, and the sole issue is whether the petitioner was entitled to classification as a personal service corporation during those years under the Revenue Acts of 1918 and 1921.

Both the Revenue Act of 1918 and the Revenue Act of 1921 define a " personal service corporation " as a corporation (1) whose income is to be ascribed primarily to the activities of the principal owners or stockholders; (2) whose stockholders are regularly engaged in the active conduct of the affairs of the corporation; (3) in which capital, whether invested or borrowed, is not a material income-producing factor; (4) but does not include any foreign corporation, or any corporation 50 per centum or more of whose gross income consists either of gains, profits, or income derived from trading as a principal, or of gains, profits, commissions or other income derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, inclusive.

That the petitioner stockholders were regularly engaged in the active conduct of its affairs, and that the income was primarily due to their activities does not seem to be questioned by the respondent, and the evidence supports those conclusions. Likewise it is clear that no part of the income was derived from a Government contract or contracts. It is therefore necessary for us to inquire only whether the petitioner meets the other conditions prescribed by the statutes.

That the petitioner was a principal is clear, since it was acting in its own behalf. Was it then dealing in a commodity or thing of such a nature that it was trading as a principal within the meaning of the Revenue Acts of 1918 and 1921? We think that it was. It was trading in a commodity that is as well defined and capable of being bought, sold and delivered as are iron, coal, corn or wheat. It was buying and selling space and the privilege of advertising in certain theatres, and it paid large amounts therefor, because they were valuable and readily salable. It is true that it prepared and displayed advertising for its clients, but there is nothing in the record to show that it attracted the clients, because of the high character

or quality of the advertising it produced, or because of the skill, talent or services of its stockholders and officers, but on the other hand, the evidence strongly indicates that it was able to procure business because it owned or controlled the space and privileges in certain theatres where the clients desired their advertisements to be displayed. It seems to us that fundamentally the petitioner's position is little different from that of a newspaper that offers space in its issues to those persons or corporations who desire to advertise. The fact that the petitioner and the newspaper own space advantageous and available for advertising is the controlling factor in attracting clients, rather than the fact that they are also prepared to design and prepare the advertisements. We are convinced that the petitioner was trading as a principal, within the meaning of the revenue acts cited and since all of its income appears to have been derived from that trading, it follows that it is not entitled to the classification it claims.

*Judgment will be rendered for the respondent.*

Considered by PHILLIPS, MILLIKEN, and VAN FOSSAN.